DRAKE, Appellant, v. MILWAUKEE MUTUAL INSURANCE COMPANY, Respondent.

*No. 771 (1974). Argued December 2, 1975.—*
*Decided December 19, 1975.*
(Also reported in 236 N. W. 2d 204.)

For the appellant there were briefs by *Korf, Pfeil & Graves* of Elkhorn, and oral argument by *Thomas Greenwald* of Rockford, Illinois.

For the respondent there was a brief by *Peickert, Anderson, Fisher, Shannon & O'Brien* of Stevens Point, and oral argument by *Maris Rushevics* of Stevens Point.

WILKIE, C. J.   This is an appeal from the sustaining of a demurrer of the defendant-respondent, Milwaukee Mutual Insurance Company, to the complaint of plaintiff-appellant who has alleged two causes of action against the defendant, one for breach of her insurance contract with defendant and one for tortious conduct in its bad faith refusal to honor the claim of its insured.

We affirm the sustaining of the defendant's demurrer as to both causes of action.

On or about July 9, 1971, Milwaukee Mutual Insurance Company issued to Mona Drake an automobile insurance policy which included uninsured motorist coverage. Under this coverage the company agreed as follows:

"To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury,' sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; provided for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration."

The standard reduction clause was also present:

"(b) Any amount payable under the terms of this Part because of bodily injury sustained in an accident by a person who is an insured under this Part shall be reduced by:

"(1) all sums paid on account of such bodily injury by or on behalf of (i) the owner or operator of the uninsured automobile and (ii) any other person or organization jointly or severally liable together with such owner or operator for such bodily injury . . . ."

On August 15, 1971, Mona Drake was injured in an automobile accident at the intersection of Highway 10 and County Trunk A in Portage county. She was a passenger in a car owned and operated by Olaf Nelson. The Nelson car collided with a car owned and operated by Maria Both. Nelson had no insurance, nor was there any liability bond or insurance policy in effect for any person legally responsible for the use of the Nelson automobile. Nelson died as the result of injuries sustained in the accident. The Both car was insured by a

policy from the Classified Insurance Corporation, with policy limits of $50,000.

In March of 1974, Drake began the process of suing in a single action the estate of Nelson, Both, and Both's insurer, Classified Insurance. Suit was commenced against Classified Insurance by service of a summons and complaint on March 4, 1974. Attempts were made to serve Both in Milwaukee county on March 1, 1974, and then in Dodge county on March 16, 1974. The personal representative of Nelson's estate was served on April 25, 1974. This suit alleged Nelson and the driver of the Both vehicle to be joint tort-feasors and claimed $100,000 in damages from the defendants, including Classified Insurance.

On April 24, 1974, Mona Drake commenced suit against her insurer, Milwaukee Mutual, under the uninsured motorist coverage. The summons and complaint served on this date alleged, in addition to the facts recited earlier relative to the accident and to the issuance of the policy, that the insurance company had breached its contract to pay Drake the sum of $15,000 which Drake was legally entitled to recover as damages from Nelson, the uninsured motorist. The complaint alleged that Drake was legally entitled to such damages because Nelson was negligent in specific respects in operating his car and that such negligence proximately caused the collision and the personal injuries of Drake. The complaint further alleged that on April 28, 1972, and again on March 4, 1974, Drake had made claims under this coverage, but these claims were denied by Milwaukee Mutual. Also, the complaint asserted that on or about June 12, 1972, the insurance company "reputiated" (sic) the policy and "knowingly misrepresented" to the plaintiff that Both's insurance policy would cover Nelson's liability.

In addition to the claim of $15,000 in damages, which was the limit of the uninsured motorist coverage, the

complaint sought $10,000 in damages for emotional distress suffered by Drake and $100,000 in punitive damages. The basis for these additional damage claims was the following allegation:

"Upon information and belief, that said refusal of coverage by the defendant Milwaukee Mutual was arbitrarily made without cause in wanton disregard of the personal rights of the plaintiff and with reckless disregard of the probability of causing emotional distress to said plaintiff. Furthermore, that said outrageous conduct and refusal was made with malice."

Milwaukee Mutual demurred to this complaint on the ground that it did not state sufficient facts to constitute a cause of action. The trial court sustained this demurrer, and a judgment of dismissal was entered.

After the demurrer in this action was sustained, a settlement was achieved between Drake and the defendants in the other action (Nelson's personal representative, Both, and Classified Insurance). According to this settlement, Nelson's estate was to pay Drake the sum of $22,500, and Classified Insurance was to pay Drake the sum of $5,500. A stipulation and order dismissing the complaint was entered in this other action. Another order approving the compromise settlement of this contingent claim against Nelson's estate was subsequently entered. Despite the fact that this settlement may have mooted this matter by the Portage county probate court, we proceed to the merits.

The first issue on this appeal concerns the first cause of action in which the plaintiff seeks recovery for the alleged breach of the insurance contract by Milwaukee Mutual. It is whether this claim is demurrable where, prior to the action against her own insurer, she has begun a negligence action against the insured other driver, this driver's insurance company, and the estate of the uninsured motorist.

This factual situation fits midway between two different Wisconsin rules of law. On the one hand, the *Leatherman, Scherr,* and *Nelson Cases*[1] posited the rule that, once other liable sources have yielded up a recovery in excess of the policy limit under the uninsured motorist coverage, then the insured cannot sue his insurance company for these benefits. Uninsured motorist coverage is "backstop or last-resort protection."[2] On the other hand, in the recent case of *Collicott v. Economy Fire & Casualty Co.,*[3] this court held that an insured may sue his insurance company under the uninsured motorist coverage, even if there are other insured parties involved in the accident who are potentially liable but have not yet been sued.[4]

The instant fact situation is controlled by the policy set down in *Leatherman, Scherr,* and *Nelson.* It makes no sense to let Drake sue Nelson's estate, the other driver, and her insurance company, and proceed to sue her own insurance company in a subsequent suit, when a judgment or settlement in the first suit may well preclude any recovery at all in the second suit (as it will in

[1] *Leatherman v. American Family Mut. Ins. Co.* (1971), 52 Wis. 2d 644, 190 N. W. 2d 904; *Scherr v. Drobac* (1972), 53 Wis. 2d 308, 193 N. W. 2d 14; *Nelson v. Employers Mut. Casualty Co.* (1974), 63 Wis. 2d 558, 217 N. W. 2d 670.

[2] *Leatherman, supra,* footnote 1, at 651.

[3] (1975), 68 Wis. 2d 115, 121–123, 227 N. W. 2d 668.

[4] The accident in *Collicott* occurred two days prior to the accident in this case, and so *Collicott,* like this case and like *Leatherman, Nelson,* and *Scherr,* was unaffected by the 1973 amendment to sec. 204.30 (5) (a), Stats. Ch. 72, Laws of 1973, amended this section by adding the following sentence: "The uninsured motorist bodily injury coverage limits provided in an automobile or motor vehicle liability policy of insurance as required in this subsection shall not be reduced by the terms thereof to provide the insured with less protection than would be afforded him if he were injured by a motorist insured under an automobile liability or motor vehicle liability policy of insurance containing the limits provided in this subsection."

this case) and may also resolve the main question at issue in the second suit (whether Drake is legally entitled to recover from Nelson's estate for her injuries). To hold otherwise would be to approve a second suit which may ultimately prove to be completely fruitless or at least redundant in important respects.

Drake contends that her situation should be governed by *Collicott*, since she made her *claims* before she sued the other liable parties. But all that these prior claims reveal is that Drake could have sued her insurance company first without suing the other liable parties. Instead, she elected to sue Nelson's estate, Both, and Both's insurance company. This choice on her part clearly changes the facts into a situation not governed by *Collicott*.

Drake also seeks recovery for what amounts to a tortious breach of contract. In addition to the failure to pay benefits under the policy, she claims that the company is also liable for what she characterizes, in the alternative, as a bad faith refusal to honor her claim, or as an intentional infliction of emotional distress.

In order to decide whether or not the complaint states facts sufficient for either of these claims, we must first determine which facts were well-pleaded and, thus, admitted on demurrer.

The complaint is, to a very great extent, couched in purely conclusory language, and it is settled that by demurring a party does not admit conclusions of law or erroneous conclusions from the facts as pleaded.[5] The complaint, shorn of its conclusory language, alleges the following facts pertinent here: That the company twice denied coverage on April 28, 1972, and March 14, 1972;

[5] *Sipple v. Zimmerman* (1968), 39 Wis. 2d 481, 489, 159 N. W. 2d 706; *Polanski v. Eagle Point* (1966), 30 Wis. 2d 507, 515, 141 N. W. 2d 281; *Jenkins v. State* (1961), 13 Wis. 2d 503, 507, 108 N. W. 2d 924; *Miller v. Welworth Theatres* (1956), 272 Wis. 355, 359, 75 N. W. 2d 286, and cases there cited.

that on or about June 12, 1972, the company stated to Drake that coverage was not available to her, and that Marie Both's insurance would cover her entire claim, including the liability of Nelson; that these denials and statements were made without heed to their effect upon Drake.

These allegations do not state facts sufficient for a claim of tortious breach of contract.

The company's claim denials were at most due to an insistence upon a then arguable interpretation of Wisconsin law, namely, that uninsured motorist coverage was unavailable when another insured party was potentially liable for Drake's damages. The holding in *Collicott*[6] did alter this broad rule, but all of Drake's claims and Milwaukee Mutual's denials occurred prior to *Collicott*. Thus there was a genuine dispute over the status of the law at the time the denials were made, and it cannot be said that the company's denials were made in bad faith. This is not a case where the validity of the claim was not even fairly debatable.

As for intentional infliction of emotional distress, it is clear that this complaint does not meet the criteria set forth in *Alsteen v. Gehl*.[7] There is no allegation that the company intended to cause emotional distress to the plaintiff but only an assertion that the company acted "with reckless disregard of the probability of causing emotional distress" to the plaintiff. Moreover, the actions of the company in denying the claim because of a difference of opinion over the law surely cannot be regarded as "extreme and outrageous" behavior, as required by *Alsteen*.

Drake urges this court to allow her the opportunity of pleading over in the event that her complaint is found wanting. Because it does not appear that any sufficient

---

[6] *Supra*, footnote 3.

[7] (1963), 21 Wis. 2d 349, 359–361, 124 N. W. 2d 312.

factual basis exists for a claim of tortious breach of contract, we conclude that it was not an abuse of discretion for the trial court to deny plaintiff the opportunity of pleading over.

*By the Court.*—Judgment affirmed.